# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
January 29, 2025 Session

## ALONZO HOSKINS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 123262    Hector I. Sanchez, Judge**

FILED
MAR 14 2025
Clerk of the Appellate Courts
REc'd By

_____

### No. E2024-00197-CCA-R3-PC
_____

The Petitioner, Alonzo Hoskins, appeals from the denial of his petition for post-conviction relief challenging his 2019 convictions for felony murder and especially aggravated robbery. The Petitioner argues that he received ineffective assistance of counsel due to trial counsel's failure to request a post-trial inquiry into a juror who had expressed difficulty hearing portions of the trial. The State counters that the post-conviction court correctly denied relief. Based on our review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TOM GREENHOLTZ, JJ., joined.

Autumn M. Bowling, Knoxville, Tennessee, for the appellant, Alonzo Hoskins.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### I.    FACTUAL AND PROCEDURAL HISTORY

##### A.    Trial

A Knox County grand jury indicted the Petitioner in 2017 for six alternate counts of felony murder, as well as especially aggravated robbery, in relation to a shooting in a hotel parking lot. *State v. Hoskins*, No. E2020-00052-CCA-R3-CD, 2021 WL 2964331, at *1

(Tenn. Crim. App. Jul. 15, 2021), *perm. app. denied* (Tenn. Dec. 8, 2021). The case proceeded to a jury trial on June 17, 2019.

During jury selection, the State spoke to prospective jurors.[1] At one point, the State paused its questioning, and the following exchange occurred:

[THE STATE]:     I'm sorry, ma'am. Am I not speaking up loud enough?

PROSPECTIVE JUROR []:     You're fine.

[THE STATE]:     Okay. I'm sorry. I thought you were doing your ear.

Following this, trial counsel asked prospective jurors whether sitting as fact-finder was "too big of a burden." When trial counsel asked, "It's okay with you?" the transcript indicated that the above-quoted prospective juror moved her head up and down. Ultimately, this prospective juror was impaneled on the jury as Juror Nine. Only one alternate juror was impaneled, comprising a jury of thirteen members.[2]

On the first day of trial, the State called six witnesses. At the beginning of the second day of trial and before the jury was brought back into the courtroom, trial counsel informed the court that Juror Nine had told the court officer, "y'all need to speak up." Trial counsel contended that Juror Nine's having hearing difficulties concerned him "because this isn't an A misdemeanor shoplifting. It's a first-degree murder case." He requested that the trial court "bring [Juror Nine] in and figure out how much of this trial she has not heard."

After some discussion, the trial court stated that it was not going to "start . . . check[ing] up on the jurors and see if they adequately understood the testimony that's been given." It further noted that both parties had an opportunity to voir dire the jury members and verify the jurors could hear and understand the proceedings.

Trial counsel responded that Juror Nine was questioned by the State during voir dire on whether she could hear, answering affirmatively. Trial counsel explained that, based

---

[1] The appellate record in the Petitioner's direct appeal was admitted as an exhibit to the post-conviction hearing. We adduce the facts of the underlying trial from this court's opinion on direct appeal as well as the appellate record.

[2] Due to illness, one of the other jurors was dismissed from service on the second day of trial, leaving twelve jurors for the remainder of the trial.

on this response, "there was no need to further voir dire her on that issue" as trial counsel had taken "her at her word that she could hear fine." The trial court stated that it would begin asking witnesses and counsel to speak louder. Counsel stated that if the trial court's ruling was that the court would not "determine if [Juror Nine] missed substantial portions of this murder trial," then counsel would move for a mistrial. Trial counsel then moved for a mistrial on the record.

The State countered that there was not enough proof as to whether Juror Nine had been unable to hear the evidence, and that it was unknown what "[Juror Nine] has heard [and] what she has not heard." The State also contended that it did not "know that there's any proof in the record at this point in time whether or not [Juror Nine] has been unable to hear anything that the witnesses have said" and that it would invade the province of the jury to inquire as to what Juror Nine had heard. Trial counsel requested that the trial court allow him to call the court officer to the stand in order to create a record on the issue. However, the trial court denied the defense's request and stated it would not make "any further inquiry" into the issue. Ultimately, the trial court denied the defense's motion for a mistrial.

Trial counsel then asked the trial court to have Juror Nine stay after trial so counsel could inquire as to how much of the trial she missed. The trial court responded, "I'll think about that. We'll consider – continue to think about it." Afterwards, the jury was brought back into the courtroom, and the trial court admonished the jury to raise their hands if they had difficulty hearing, noting that it was "really important" that the jurors heard what the witnesses said. The trial then resumed.

At a later point in the trial, the court officer informed the trial court that some of the jurors were having a "hard time" hearing trial counsel. The court officer stated "three of them say that they can't hear [trial counsel]. He needs to talk louder or talk into the mic." The trial court asked the court officer to remind trial counsel to talk louder.

At the conclusion of the proof, the jury returned a verdict, finding the Petitioner guilty as charged. At a subsequent sentencing hearing, the trial court merged the Petitioner's six convictions for felony murder and imposed a life sentence. For Petitioner's especially aggravated robbery conviction, the trial court sentenced the Petitioner to twenty years' imprisonment to be served consecutively to his felony murder sentence.

In the Petitioner's motion for new trial, he argued, among other things, that the trial court erred by preventing the defense from ascertaining whether Juror Nine was competent to hear the case and by not declaring a mistrial when the trial court refused to inquire further

into Juror Nine's competence to hear the case. The trial court noted that it usually reminded the attorneys to speak up throughout the trial, and it "[did not] find anything in [its] notes to indicate that anyone expressed that they had missed any kind of substantial amount of the trial." Ultimately, the trial court denied the motion for new trial.

## B. Direct Appeal

On direct appeal, the Petitioner contended, *inter alia*, that he was denied the right to a unanimous jury verdict due to Juror Nine's hearing complaint and that the trial court erred by preventing him from making an offer of proof in that respect. *Hoskins*, 2021 WL 2964331, at *15. This court noted that the Petitioner failed to request further questioning of Juror Nine after trial and failed to present any proof on this matter at the motion for new trial hearing. *Id.* at *17. While this court determined that the issue was ultimately waived and that the Petitioner had not established plain error, it also noted that the "trial court was not required to inquire into how much testimony a juror may have missed at trial" and, therefore, did not abuse its discretion in response to Juror Nine's original complaint. *Id.* Accordingly, this court denied the Petitioner's request for relief on that issue. *Id.*

## C. Post-Conviction Hearing

A post-conviction hearing commenced on November 2, 2023. Trial counsel testified that he was first alerted to Juror Nine's potential hearing issues when Juror Nine made "a craning motion . . . with her hands during the State's voir dire[.]" However, she responded to the State that she could hear. As trial counsel "took [her] word[,]" he did not question Juror Nine further regarding any hearing concerns. On the second day of the Petitioner's trial, the court officer informed him that Juror Nine was having trouble hearing and "perhaps did not hear part of what had occurred." Trial counsel brought that fact to the trial court's attention and moved for a mistrial.

After the trial court denied the motion for a mistrial, trial counsel requested to call the court officer as a witness to make a proffer on the issue for the record. The trial court also denied that request but said it would "think about" whether to have Juror Nine stay after trial for further inquiry. However, trial counsel "forgot" to renew his request to question Juror Nine at the trial's conclusion. Trial counsel also did not conduct a post-trial investigation into Juror Nine's ability to hear or subpoena her to appear at the motion for new trial hearing.

Trial counsel acknowledged that while six witnesses had testified before Juror Nine lodged her hearing complaint, trial counsel described only three of those six witnesses

-4-

as being important to the case. Trial counsel also testified that the members of the jury all agreed that the guilty verdict was their verdict when polled individually at the end of trial.

Juror Nine testified at the post-conviction hearing that she had only served once on a jury "three or four years" ago. When asked what the nature of the case was, Juror Nine responded, "It was for Eric Boyd."[3] Juror Nine did not remember whether she made any complaints about her hearing issues at trial, though she did state that she had obtained hearing aids three years prior to the date of the post-conviction hearing.

Juror Nine did not remember hearing evidence relating to a shooting in a hotel parking lot, did not remember the name of the Petitioner, did not recognize the Petitioner in the courtroom, and "promised" that she did not serve on the Petitioner's jury. The Petitioner introduced the jury list for the Petitioner's June 2019 trial and the jury list for Mr. Boyd's August 2019 trial as exhibits to the hearing. Juror Nine's name appears on the Petitioner's trial jury list but not on that for the trial of Mr. Boyd.

The post-conviction court denied the petition by written order on January 30, 2024. As relevant to the sole issue raised in this appeal, the post-conviction court stated the following:

> In considering whether [the] Petitioner's attorney performed deficiently, and that the deficient performance prejudiced the Petitioner, he has demonstrated by clear and convincing evidence that [trial counsel] did in fact perform deficiently by failing to renew his objection to [Juror Nine] not being questioned by the trial court. The record indicates that the [trial court] did inform [trial counsel] that he would entertain the request after the trial was finished to individually question [Juror Nine] about what, if any[,] proof she had missed before she informed [the court officer] of her hearing issues. That did not occur and the matter was therefore waived on direct appeal. This [c]ourt finds that [trial counsel's] failure to renew the inquiry by the trial court of [Juror Nine] "[]deprived him of a fair trial and called into question the reliability of the outcome . . . [.]" *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999). This [c]ourt gives emphasis to the reliability of the outcome cited in the above *Burns* decision. [The] Petitioner, however, has failed to demonstrate by clear and convincing evidence, that . . . [t]o prevail on a claim of ineffective

---

[3] Eric Boyd was convicted by a Knox County jury for multiple crimes perpetrated against Channon Christian and Christopher Newsom in 2007. *See State v. Boyd*, No. E2019-02272-CCA-R3-CD, 2021 WL 5629865 (Tenn. Crim. App. Dec. 1, 2021). His trial occurred in August of 2019, approximately six weeks after the Petitioner's trial.

assistance of counsel, the defendant must establish both that his lawyer's performance was deficient, and that the deficient performance prejudiced the defense. *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland* [*v. Washington*, 466 U.S. 668, 687 (1984)]). Because he has failed to make a showing of prejudice, relief on this ground is respectfully denied.

The Petitioner timely appealed.

## II.   ANALYSIS

The Petitioner argues on appeal that, while the post-conviction court correctly concluded that trial counsel had performed deficiently by failing to request a post-verdict inquiry into Juror Nine's ability to hear the proof at trial, it erred by concluding that no prejudice attended this deficiency. The State responds that trial counsel's conduct did not amount to deficient performance, and, in any event, the Petitioner has not shown that he was prejudiced.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove allegations of fact by clear and convincing evidence. *Id.* § -110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "[Q]uestions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Id.* Because they relate to mixed questions of law and fact, the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial are reviewed under a de novo standard with no presumption of correctness. *Id.* at 457.

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980); *Dellinger*, 279 S.W.3d at 293. When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland* 466 U.S. at 687; *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). "Because a petitioner must

establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," and reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. *Rhoden v. State*, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish "a reasonable probability that[,] but for counsel's errors[,] the result of the proceeding would have been different." *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (citing *Burns*, 6 S.W.3d at 463).

A reviewing court need not address both *Strickland* components if a petitioner makes an insufficient showing of one component. *Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697). In this case, we will focus our attention on *Strickland*'s prejudice prong.

The Petitioner's claim, in essence, is that trial counsel deficiently failed to call a witness. Unlike most claims of this nature, the witness here was a juror in the Petitioner's case who, the Petitioner contends, should have been called to testify post-verdict. In the context of a *Strickland* prejudice analysis, "[i]t is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of . . . what a witness's testimony

might have been if introduced by defense counsel." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Presenting such a witness at the post-conviction evidentiary hearing "is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." *Id.*

With these precepts in mind, the Petitioner here would have been required to present clear and convincing proof at the post-conviction hearing that Juror Nine's hearing difficulties during his trial were so profound that the trial court, had it been made aware of this, would have been compelled to set aside the verdicts and grant a new trial. The Petitioner made no such showing. We acknowledge that the proof at the post-conviction hearing was perplexing. Juror Nine's name appeared on the jury list for the Petitioner's trial, and there appeared to be no genuine dispute among the parties or the post-conviction court that Juror Nine was in fact impaneled on this case. Further, and contrary to Juror Nine's testimony, her name was not listed on the jury list for the trial of Mr. Boyd. We note that more than four years had passed between the Petitioner's trial and the hearing on his post-conviction petition. It is possible, indeed likely, that Juror Nine had grown confused about the nature of her service in the intervening years, particularly given the high amount of publicity surrounding Mr. Boyd's case. *See Boyd*, 2021 WL 5629865, at *5 (detailing the defendant's claim that his case had received an "enormous amount of pretrial publicity"). In any event and despite the Petitioner's efforts to comply with the dictates of *Black*, he failed to present proof at the evidentiary hearing that Juror Nine was unable to hear portions of his trial. 794 S.W.2d at 757 (noting that testimony by the contemplated witness at a post-conviction hearing is necessary to establish prejudice).

Likewise, the record of the Petitioner's trial proceedings does not support his claim of prejudice on this point. The record contains evidence indicating that Juror Nine could in fact hear the proof at trial. Juror Nine responded to questions at jury selection and indicated she could hear the parties. The trial court also asked about the jury's ability to hear periodically throughout the trial. At the conclusion of the trial, all twelve jurors responded to the jury poll, affirming that they had reached a unanimous verdict. As this court previously noted, "The record contains no suggestion that [Juror Nine] had any difficulty hearing the testimony after the trial court addressed the juror's complaint." *Hoskins*, 2021 WL 2964331, at *17. It continued, "Both the trial court and the State repeatedly ensured that the jury could hear both the testimony and questioning." *Id.* The post-conviction court did not err by concluding that the Petitioner had failed to demonstrate prejudice.

The Petitioner further argues, however, that a "contradiction" in the post-conviction court's order denying relief compels the conclusion that prejudice exists. The Petitioner points to the post-conviction court's quotation of *Burns*, 6 S.W.3d at 463, in the deficiency-analysis portion of its order and its finding that "[trial counsel's] failure to renew the inquiry by the trial court of [Juror Nine]" deprived the Petitioner of a "fair trial and called into question the reliability of the outcome . . .'" It appears that the post-conviction court mistakenly conflated the "reliability of the outcome" aspect of the prejudice prong with its analysis of the deficiency prong. Even so, we review whether prejudice has been established under a de novo standard with no presumption of correctness. *Fields*, 40 S.W.3d at 456. After conducting our review under this standard, we conclude that the Petitioner has failed to show prejudice in this case.

We acknowledge that the Petitioner advanced an additional ground for relief at oral argument—*i.e.*, that he was denied the right to a fair trial because Juror Nine was incompetent to serve as a juror on his trial and believed that she was deliberating on a separate trial. This argument is waived for several reasons. First, this ground was not raised in the post-conviction petition or in a properly recognized amendment; thus, it was not properly presented to the post-conviction court. *See Lowe v. State*, 703 S.W.3d 319, 335 (Tenn. Crim. App. 2024) (citation omitted) (noting that a post-conviction court lacks the authority to hear issues that have not been pled in the petition or raised in a recognized amendment). Second, because our jurisdiction is appellate only, we cannot rule on an issue that was not first passed upon by an inferior tribunal. *See generally State v. Bristol*, 654 S.W.3d 917, 925 (Tenn. 2022). Finally, the Petitioner did not include this issue in his appellate briefing but instead raised it for the first time at oral argument. *See State v. Henry*, 539 S.W.3d 223, 250-51 (Tenn. Crim. App. 2017). For all of these reasons, the Petitioner's argument regarding juror incompetence is waived.

## III. CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE
